# PEARL ALLISON v. BLOUNT NATIONAL BANK.
## —390 S.W.(2d) 716.

Eastern Section. January 14, 1965.

Certiorari Denied by Supreme Court May 3, 1965.

360

Goddard & Gamble, Maryville, for plaintiff in error.

Kramer, Dye, Greenwood, Johnson & Rayson, Knoxville, for defendant in error.

COOPER, J. Referring to the parties as they appeared below, the plaintiff, Pearl Allison, brought this suit against the defendant, Blount National Bank, in an effort to recover damages for personal injuries sustained when she slipped and fell to the floor of the lobby of the branch office of the defendant.

In her declaration, the plaintiff charged that her fall resulted from the negligence of the defendant (1) in allowing water to accumulate on the lobby floor, thus making it slippery and dangerous; (2) in failing to take proper precautions to remove the water; (3) in failing to place proper and adequate mats to absorb the water; and (4) in failing to warn the public of the dangerous condition of the floor.

The defendant filed a general plea of "not guilty", thereby controverting all material averments of the declaration.

At the conclusion of the plaintiff's proof, the defendant moved for a directed verdict on the ground that there was no evidence upon which a verdict for the plaintiff could be predicated. The Court sustained the motion, and entered a judgment dismissing plaintiff's action. This appeal resulted.

The facts, concerning which there is no substantial dispute, are as follows:

362

The defendant, a national banking corporation, owns and operates a branch bank on the Old Knoxville Highway near Maryville, Tennessee. The lobby floor of the branch bank is constructed of terrazzo, light grey in appearance. The bank constantly keeps a hard, corrugated, rubber mat in place just inside the Rose Street entrance to the lobby and, on occasion, when customers track in water and it begins to accumulate, the bank places an absorbent mat or rug on the lobby floor next to the rubber mat. The bank's janitorial service is limited to the evening hours, and it is not the practice of the bank to mop up excess moisture from the lobby floor during banking hours.

On July 3, 1961, it rained intermittently throughout the morning hours, stopping just before the noon hour. At approximately 1:00 P.M., the plaintiff entered the bank lobby through the Rose Street entrance. The usual rubber mat was at the entrance; however, the absorbent mat or rug was not in place and had not been used during the morning hours. As plaintiff stepped from the rubber mat onto the terrazzo floor, her right foot slipped and she fell, receiving the injuries of which she complains.

The plaintiff described the manner of her fall as follows:

*B. of Ex. p. 5.*

"A. Well, I entered the door. And just as you go in, why there's a rubber mat there, right at the entrance of the door, and just as I stepped off of the rubber mat onto the floor, why my right foot just slid out from under me. And this left foot just folded up under me. And I just set right flat down on the left foot. * * *"

After plaintiff's fall, her dress was found to be wet where it had come in contact with the floor, as was the side of her left shoe.

The plaintiff testified that, after her fall, she could see evidence that water had been tracked into the bank by prior customers. In explanation of her inability to see the water trackage prior to her fall, the plaintiff testified that the terrazzo floor was mottled, light grey in color, and that in the absence of a close examination, the presence of water was not evident. Plaintiff also stated that she was not on the lookout for the presence of water as it had stopped raining about one hour before she entered the bank lobby.

Mr. James A. Norton, the manager of the bank's branch office, testified that he had been present during the morning hours; that he knew it had been raining but had not noticed any accumulation of water on the floor of the bank and, consequently, had not placed the absorbent rugs at the entrance; that after plaintiff's fall, he examined the lobby floor and found a film of moisture on the floor as the result of water having been "tracked in" by customers prior to plaintiff arrival.

We have been unable to find a reported Tennessee case wherein the Court has considered the liability of a proprietor of a place of business for an injury resulting from a fall on a floor made slippery by tracked-in water, snow and the like. However, numerous such cases from other jurisdictions are reported in the annotation beginning at page 6 of 62 A.L.R.2d.

■ ■ We have read most of the cases reported in the annotation, as well as others cited in the briefs and revealed by our independent research, and have come to

the conclusion that the duty owed by a proprietor of a place of business in the so-called trackage cases is the same as in any other situation where a dangerous condition is created on the premises by someone other than the proprietor or his employees—that duty is to exercise reasonable care to keep the premises in a reasonably safe and suitable condition, including the duty of removing or warning against a dangerous condition traceable to persons for whom the proprietor is not responsible, or to the action of the elements, if the circumstances of time and place are such that by the exercise of reasonable care the proprietor should have become aware of such condition. Walls v. Lueking, 46 Tenn. App. 636, 332 S.W.(2d) 692; Dolan v. Bry Block Mercantile Co., 23 Tenn.App. 47, 126 S.W.(2d) 376; Anno. 62 A.L.R.(2d) 6, 15 and 33. In the trackage cases, as in the others, liability is predicated on the proprietor's superior knowledge of the dangerous condition on his premises and he is not liable for injuries sustained from dangers that are obvious, reasonably apparent or as well known to the customer as to the proprietor. Kendall Oil Co. v. Payne, 41 Tenn.App. 201, 293 S.W.(2d) 40; Anno. 62 A.L.R.(2d) 6, 28.

■ ■ Some factors to be considered in determining if there has been a reasonable time lapse for a proprietor of a business establishment to be chargeable with constructive notice of a condition endangering the safety of his customers are the nature of the business, the size of the store, the number of customers, the nature of the dangerous substance, its location, and the foreseeable consequences. Moore v. American Stores, Co., 169 Md. 541, 182 A. 436; Hubbard v. Montgomery Ward & Co., 221 Minn. 133, 21 N.W.(2d) 229; see also cases cited under the heading ''Time factor as affecting proof of con-

structive notice.'' Anno. 61 A.L.R.(2d) 126 et seq. Consequently, it is generally for the jury to say whether the condition causing the injury to a store customer had existed long enough that a reasonable man exercising reasonable care would have discovered it. Hale v. Safeway Stores, Inc., 129 Cal. App.(2d) 124, 276 P.(2d) 118; Fox v. Ben Schechter & Co., 57 Ohio App. 275, 13 N.E.(2d) 730; Hogan v. S. S. Kresge Co. (Mo.App.1936), 93 S.W. (2d) 118.

In our opinion, under the facts in the present case, reasonable minds could disagree easily (1) as to the amount of water on the lobby floor, (2) the length of time it was present, and (3) whether or not the presence of the water was as reasonably apparent to the plaintiff as to the defendant. As a decision on the issue of liability, of necessity, would be based on their conclusions on these issues, it follows that reasonable minds could disagree easily as to whether the defendant was guilty of negligence in permitting water to accumulate on a terrazzo floor and in failing to warn plaintiff of its presence, and as to whether the plaintiff was guilty of negligence in failing to observe the water before she fell.

''When a given state of facts is such as reasonable men may fairly differ upon a question as to whether there was negligence or not, the determination of the matter is for the jury.'' Knoxville Traction Co. v. Brown, 115 Tenn. 323, 330, 89 S.W. 319, 321.

We should note, at this point, that when the evidence set out above is considered in the light most favorable to the plaintiff as we are required to do when passing on the propriety of the court's action in directing a verdict for the defendant, it would support, in our opinion, a finding by a jury that the floor of the bank

was wet due to water being tracked-in by customers of the bank; and that because of the color and type of floor, the presence of the water created a dangerous condition not readily discernible by the plaintiff or any other customer of the bank. Further, we are of the opinion that one fair inference to be drawn from evidence that defendant had failed to either use the absorbent mat or to mop the floor during the morning hours when it was raining intermittently, coupled with evidence that the rain had ceased approximately one hour before plaintiff's fall, is that the water condition did not come about as of the moment of plaintiff's fall or even minutes before, but had continued throughout the morning—that this was sufficient to charge the defendant with constructive notice of a condition endangering the safety of its customers, and imposed upon it the duty to remove the condition or to warn its customers of its presence; that the defendant failed to perform this duty, and as the proximate result, the plaintiff received her injuries. There being evidence in the record which, in our opinion, would support a verdict for the plaintiff, it follows that the trial court was in error in directing a verdict for the defendant and in dismissing plaintiff's suit.

The judgment of the trial court is reversed, and the cause is remanded for a new trial. Costs incident to the appeal are adjudged against the defendant, Blount National Bank.

McAmis, P. J., concurs.

PARROTT, J. (dissenting). I respectfully dissent. I would affirm the circuit judge's action in sustaining the defendant's motion for a directed verdict because the plaintiff has failed to prove any negligence on the part of the defendant.

The mere fact a fall occurred on a floor which had water on it is not proof of negligence on the part of the proprietor. Plaintiff is proceeding on the theory of negligence. She must, therefore, offer proof the defendant has failed to comply with his duty of ordinary care which is owed to the plaintiff before any liability exists. In this particular case, it is incumbent upon the plaintiff to prove a dangerous condition existed and that the defendant had actual or constructive notice of the condition. The water on the floor is not traceable to any act of the proprietor of his employees, but was caused by third persons.

I concede the plaintiff should not have to prove notice when the condition is created by the proprietor or his employee because the usual rules of the law of agency are applicable, but this case is strictly governed by the rules of the law of negligence. Kinser v. Rich's, Inc., 300 F.(2d) 902 (Sixth Circuit).

In the cases of Hill v. Castner-Knott Dry Goods Co., 25 Tenn.App. 230, 166 S.W.(2d) 638, the court held in the absence of proof whether a customer or employee created the dangerous condition, the jury should not be allowed to speculate. I interpret this case requires a plaintiff to offer proof of actual or constructive notice.

Generally, there is no liability on the account of a foreign substance deposited on the floor, when the floor has been properly constructed and free from defects, in the absence of actual or constructive notice. Phillips v. Harvey Co., 196 Tenn. 174, 264 S.W.(2d) 810 (1953); Gargaro v. Kroger Grocery and Baking Co., 22 Tenn. App. 70, 118 S.W.(2d) 561 (1938); Busler v. Cut-Rate Super Market, 47 Tenn.App. 21, 334 S.W.(2d) 738 (1942); Vogue, Inc. v. Cox, 28 Tenn.App. 344, 190 S.W.(2d) 307 (1945); Restatement, Torts, Sec. 343 (1934).

The question of notice is one for the jury. When there is a complete absence of proof as to when the dangerous condition came about, there is nothing to submit to the jury and it would be unfair to both parties to permit the jury to speculate or guess when the floor became wet. The proof shows it had been raining most of the day but the rain had ceased approximately one hour prior to the fall. There is no proof the sidewalk and parking lot were not wet. Mrs. Allison, on cross-examination in response to a question whether they were dry, said:

"Well, I wouldn't say that they was or that they wasn't, but since it had rained that morning, why you would think, naturally, that they would be probably damp."

Neither the court or jury could determine from the proof whether the water on the floor was tracked in by the first customer in the morning and permitted to remain all day or caused to be on the floor by a customer immediately preceding Mrs. Allison.

Some may say the fact that it is raining or has been raining should be constructive notice to a proprietor that floors near the entrance will become wet and create a dangerous condition. I would not say a proprietor is guilty of negligence in permitting a small accumulation of water to collect on the floor under weather conditions which existed in this case. It would be impossible to maintain a perfectly dry floor and remain open for business during inclement weather. He has a duty to provide a reasonably safe condition but is not an insurer of the safety of persons. To hold otherwise would, in fact, say the mere presence of water on the floor would be negligence per se. See Curtis v. Traders National Bank, 314 Ky. 765, 237 S.W.(2d) 76; Hill v. Davison-Paxon Co., 80

Ga.App. 840, 57 S.E.(2d) 680; Cox v. Goldstein, 255 Ala. 664, 53 So.(2d) 354. Also see Pfeifers of Arkansas v. Rorex, 225 Ark. 840 286 S.W.(2d) 1, 62 A.L.R.(2d) 1.

In a case such as this where a dangerous condition is caused by strangers and where there is no proof that the construction is inherently dangerous, the plaintiff should be required to offer proof of actual or constructive notice of such condition before there is a question for the jury.

The plaintiff's allegations that the defendant's failure to put down absorbent mats is a breach of duty, in my opinion, is not sound. Mrs. Allison had been a customer of the bank for the past six months and was familiar with the premises. There is no proof that she relied on any absorbent mats being placed in the building. I would adopt the reasoning of the Supreme Court of Missouri in the case of Schmoll v. National Shirt Shops, 354 Mo. 1164, 193 S.W.(2d) 605.

"Of the evidence that defendant had on other occasions when it was raining, through a number of years, placed a rubber matting on the lobby floor; and had put out the matting after plaintiff had fallen—*it was not shown that plaintiff in approaching defendant's store had known of or relied upon a custom or habit of defendant to cover the floor with a rubber matting* when the brass was slippery [the terrazzo floor in question had brass lettering embedded in it]. Since it was not shown that the floor was not reasonably safe, and except in the respect that its unsafe condition was obvious, we hold the use of the matting on former occasions, when the floor was wet, should not be considered such an admission of a negligently unsafe condition of the floor as to justify the submission of the issue to the jury. To hold

otherwise would be but to penalize defendant for an extra precaution for the safety or convenience of its patrons.'' (Emphasis ours.)

It is quite generally held that there is no liability to a customer who slips because of water, snow, etc., which has been carried in by other people, the floor being properly constructed and not inherently dangerous. Kresge Co. v. Fader, 116 Ohio St. 718, 158 N.E. 174, 58 A.L.R. 132; Bell v. Great Atlantic & Pacific Tea Co., 288 Pa. 160, 135 A. 607; Murray v. Bedell Co., 256 Ill.App. 247; Heidland v. Sears Roebuck & Co., 233 Mo.App. 874, 110 S.W.(2d) 795; Battles v. Wellan, La.App., 195 So. 663; Lander v. Sears, Roebuck & Co., 141 Me. 422, 44 A.(2d) 886. But there are cases to the contrary. Gordon v. McIntosh, Tex.Civ.App., 54 S.W.(2d) 177; Belzer v. Sears, Roebuck & Co., Mo.App., 76 S.W.(2d) 701; Great Atlantic & Pacific Tea Co., v. McLravy, 6 Cir., 71 F.(2d) 396.

I am of the opinion the plaintiff's proof is insufficient to prove a dangerous condition existed and that the defendant had actual or constructive notice and the circuit judge properly directed a verdict.